UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **AMERICAN INCENTIVE** | § | |
| **ADVISORS, LLC,** | § | |
| *Plaintiff* | § | |
| | § | **No.  1:24-CV-00619-DH** |
| **v.** | § | |
| | § | |
| **MCCORMICK MOTORS, INC.,** | § | |
| *Defendant* | § | |

### ORDER

Before the Court are Plaintiff American Incentive Advisors, LLC's ("AIA")
motion for summary judgment, Dkt. 32, AIA's motion to strike, Dkt. 33, Defendant
McCormick Motors, Inc.'s ("MM") motion for summary judgment, Dkt. 34, MM's
motion to exclude, Dkt. 35, MM's motion to compel, Dkt. 39, MM's motion to strike,
Dkt. 46, MM's motion to supplement its motion to exclude, Dkt. 60, and all related
briefing. After considering the filings and the relevant law, the Court will deny AIA's
motion for summary judgment, Dkt. 32, deny AIA's motion to strike, Dkt. 33, grant
in part and deny in part MM's motion for summary judgment, Dkt. 34, grant in part
and deny in part MM's motion to exclude, Dkt. 35, deny MM's motion to compel, Dkt.
39, grant in part and deny in part MM's motion to strike, Dkt. 46, and deny as moot
MM's motion to supplement, Dkt. 60.

### I.    BACKGROUND

This case arises from an agreement executed between MM and AIA, under
which AIA provided MM with consulting services related to the federal Employee

1

Retention Tax Credit ("ERTC") program. Dkts. 1-2; 1-5; 36-1.[1] Under the agreement, AIA agreed to "identify, substantiate, calculate, and document any applicable federal and state tax credits, incentives, or deductions not previously filed for prior to the date of this agreement yet entitled by federal or state law for company to claim" and in exchange MM would pay AIC 20 percent of the monetary value of any ERTCs MM received as a result of AIA's services, paid out in two installments. Dkt. 36-1, at 1-2 ("Company agrees to pay whereby 50% of our fee is due upon receipt of the tax credit documents and 50% due upon receipt of each cash payment from the applicable federal taxing authority."). Moreover, if "any credit" AIA calculated was "denied for any reason," AIA would "refund that portion" of the agreed fee. *Id.* at 2.

MM also entered into a tax return engagement letter with Mandy Shell, a tax preparer referred to MM by AIA, who MM believed to be a certified public accountant ("CPA"). Dkt. 32-4, at 2 (engagement letter in which Shell identifies herself as a "CPA" in her signature line). Shell ultimately determined that MM was entitled to ERTCs based on an application questionnaire and impact statement MM submitted to AIA, and prepared tax returns for MM based on that finding. Dkts. 32-2, at 3; 32-4; 32-5; 32-6; 32-9. MM received ERTCs from the Internal Revenue Service ("IRS") in the total amount of $975,792.13 based on the tax returns Shell prepared. Dkt. 32-7, at 8; 36-12, at 3. MM paid AIA an initial payment of $97,579.21, representing 50

---

[1] The federal government began offering ERTCs during the COVID-19 pandemic under the Coronavirus Aid, Relief, and Economic Security Act to help businesses retain employees during the pandemic. Dkt. 32-2, at 2.

percent of the fee MM owed AIA based on the total ERTCs MM received from the IRS. Dkt. 36-1, at 2; 36-12, at 1-2.

After conducting additional research, however, MM expressed concern to AIA about MM's ERTC eligibility and requested information as to how their ERTCs "would be supported in the event of an audit." Dkt. 36-5 (asking AIA to "withdraw our claim" and "immediately refund[]" payment if AIA could not substantiate its analysis). MM contracted a third-party tax consultant to analyze its eligibility for the ERTCs, who was "unable to identify any viable" ERTCs for which MM was eligible. Dkt. 36-9; 36-13. Based on that conclusion, MM returned the ERTCs it had received from the IRS, though the IRS never audited or told MM that it did not qualify for the ERTCs. Dkts. 32-7, at 8-10; 36-6, at 31. AIA continued to demand to second half of its payment under the contract, Dkt. 36-12, and filed this lawsuit when MM declined to pay the outstanding balance. Dkt. 1-2.

AIA brought claims in state court for breach of contract, sworn account, and alternatively, on a theory of quantum meruit. Dkt. 1-2, at 3-9. MM leveled counterclaims against AIA for breach of contract, fraud, fraudulent inducement, negligent misrepresentation, and violations of section 17.46(b) the Texas Deceptive Trade Practices Act ("DTPA"). Dkt. 1-5, at 5-12. MM then removed this case to federal court. Dkt. 1. The parties each moved for summary judgment. Dkts. 32; 34. While AIA moved for summary judgment on all its claims as well as MM's counterclaims, MM moved for summary judgment on AIA's claims. Dkts. 32; 34. The parties also

each filed motions challenging expert designations and testimony, Dkts. 33; 35; 46.

MM also moved to compel discovery from AIA's expert. Dkt. 37.

## II.    MOTIONS TO EXCLUDE UNDER RULE 703

### A.    The Court will exclude the legal conclusions contained in Podraza's expert report.

MM moves to exclude AIA's expert Benjamin Podraza, arguing that Podraza's

testimony should be excluded because his report fails to comply with the disclosure

requirements in Rule 26(a)(2)(b) and offers improper legal opinions. Dkt. 35, at 4-9.

AIA responds that Podraza's report, as supplemented by his affidavit filed in support

of AIA's motion for summary judgment, complies with Rule 26(a)(2)(b), and is

otherwise admissible under Federal Rule of Evidence 702. Dkt. 44, at 4-11.[2] In reply,

MM insists that Podraza's report fails to meet the disclosure requirements and that

AIA has not presented a substantial justification for such an omission, and in any

event, Podraza's testimony is unreliable and replete with improper legal conclusions.

Dkt. 55, at 4-10.[3]

---

[2] The Court overrules AIA's objection to the late filing of MM's appendix to its motion to exclude, as the less-than-24-hour delay was due to a technical issue in filing these exhibits and AIA did not identify any prejudice it suffered from the delay. Dkts. 44, at 2; 55, at 1-2.

[3] MM also filed a motion to supplement its motion to exclude with a recent opinion from the Eastern District of Tennessee, in which the court excluded Podraza's expert testimony regarding his work on a client's ERTCs because he did not disclose the facts or data he used to form his opinion on that client's qualification for ERTCs under the loss-in-revenue test and "explicitly predicated" his opinion as to the client's qualification under the shutdown test "on speculation." Dkts. 60; 60-1, at 6-14. AIA opposed the motion, arguing that MM's motion is untimely because it was not filed the same day that MM gave notice of its intent to file the supplement and that Podraza's testimony should not be stricken. Dkt. 63. Because the Court did not rely on the Tennessee decision in resolving MM's motion to exclude, the Court will deny as moot MM's motion to supplement, Dkt. 60.

Under Rule 26, expert-witness disclosures must be accompanied by a report containing, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(b)(i)-(vi). Under Rule 37, in turn, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, MM accuses AIA of failing to include information regarding Podraza's "substantial financial relationship" with AIA, in violation of Rule 26(a)(2)(b)(vi). Dkts. 35, at 4-6; 55, at 5-6.[4]  AIA responds that Podraza's report, as supplemented by an affidavit attached to AIA's motion for summary judgment, "fully satisfies" Rule 26's disclosure requirements, insisting that Podraza should not be excluded "by the fact that he received referrals" (unrelated to this case) from AIA. Dkt. 44, at 9-10.

---

[4] MM also cites to Rule 26(a)(2)(b)(i) in passing to suggest that in failing to conduct an independent analysis of the facts of this case, Podraza's report fails to include a "a complete statement of all opinions the witness will express and the basis and reasons for them." Dkt. 35, at 9. Yet nothing in Podraza's report suggests that he did not "independently" review the facts of this case based on the documents provided to him even if he did not independently confirm the veracity of the information in those documents. *See* Dkt. 37-5.

Contrary to MM's contention that Podraza's expert report contained "no mention of anything that could be even vaguely construed as a statement of compensation," Podraza disclosed his hourly rate as an expert witness in this case in that report. Dkts. 37-5, at 3 ("For this engagement my time is billed at $300 per hour."); 55. Under the plain language of Rule 26(a)(2)(b)(vi), then, Podraza disclosed "the compensation to be paid for the study and testimony in the case." Dkt. 7-5, at 3; Fed. R. Civ. P. 26(a)(2)(b)(vi). MM complains that Podraza testified that he has a separate referral agreement with AIA, under which AIA refers clients to Podraza; MM claims this information is "highly relevant and necessary to enable this Court to make a proper determination as to the reliability of Mr. Podraza's potential testimony[.]" Dkts. 35, at 5; 37-6, at 9. While this information is likely relevant, it falls outside the required disclosures listed under Rule 26(a)(2)(b) since that referral agreement does not pertain to compensation related Podraza's role as an expert in *this* case. Dkt. 37-6, at 9; *Drake v. Allergan, Inc.*, No. 2:13-CV-234, 2014 WL 12718977, at *1 (D. Vt. Oct. 29, 2014) ("Rule 26 states that an expert's report must contain 'a statement of the compensation to be paid for the study and testimony in the case.' Fed. R. Civ. P. 26(a)(2)(B)(vi). Under the plain meaning of the Rule, this required disclosure is limited to the present case."). MM's motion to exclude Podraza's testimony on this basis is denied.

MM next seeks to exclude Podraza's expert testimony under Federal Rule of Evidence 702. Dkt. 35, at 6-9. Rule 702 provides that: "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the

6

form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The Federal Rules of Evidence also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 597 (1993). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

Here, MM contends that Podraza's testimony should be excluded because he is unqualified, as a CPA, to render the (improper) legal opinions he offers, and he never conducted an independent analysis of MM's eligibility for the ERTCs at issue here. Dkts. 35, at 6-9; 55, at 8-10. MM identifies as legal conclusions Podraza's statements that his "examination did not reveal evidence of intentional misrepresentation or other irregularity in connection with the ERTC claim preparation services provided by AIA or Shell Law" and that he "did not identify evidence of intentional misrepresentation or wrongdoing by AIA or Shell Law in relation to the ERTC services rendered to McCormick Motors." Dkts. 35, at 8; 37-5, at 4, 8. AIA responds

by highlighting Podraza's qualifications as a CPA who has prepared "hundreds of ERTC claims," and argues that Podraza's opinion is properly based on his review of the same documents Shell used to conduct her analysis of MM's qualification for the ERTCs. Dkt. 44, at 8-11.

Here, the Court agrees with MM that Podraza's statements regarding "evidence of international misrepresentation or wrongdoing" by AIA offer improper legal conclusions. While an expert witness may give their opinion on "an 'ultimate issue' of fact" if qualified to do so, they may not "offer conclusions of law." Fed. R. Evid. 704; *United States v. Oti*, 872 F.3d 678, 691-92 (5th Cir. 2017) (noting that an expert is not permitted to "'merely tell the jury what result to reach'" (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 n.4 (5th Cir. 1992))). Both of Podraza's opinions on the lack of evidence showing misrepresentation or wrongdoing on AIA's part render legal conclusions on the issue of whether AIA's acts or omissions in this case amount to actionable misrepresentation, a question of law impacting at least MM's DTPA claim. Dkt. 1-5, at 9-10; *Wu v. Lumber Liquidators, Inc.*, No. 14-20-00765-CV, 2024 WL 3160554, at *14 (Tex. App.—Houston [14th Dist.] 2024, no pet.) ("Whether the facts constitute a DTPA misrepresentation is a question of law." (citing *Mays v. Pierce*, 203 S.W.3d 564, 571-72 (Tex. App.—Houston [14th Dist.] 2006, pet. denied))); *Collier v. Wells Fargo Home Mortg. as Successor in Int. to Norwest & Parker Square Bank*, No. 7:04-CV-086-K, 2006 WL 1464170, at *9 (N.D. Tex. May 26, 2006) ("Whether the facts, once ascertained, constitute a DTPA misrepresentation is a question of law."); *see also Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)

8

(explaining that an expert may never opine on the legal implications of evidence). Moreover, it is unclear how Podraza's credentials and experience as a CPA qualify him to opine on whether AIA made any misrepresentations while negotiating with MM and performing under the contract. Podraza's legal conclusions should be excluded.

MM's other proposed bases for further exclusion do not merit the exclusion of all of Podraza's testimony. MM argues that Podraza's testimony should be excluded because he did not conduct any independent review of the case apart from his review of the documents provided to him by AIA. Dkt. 35, at 8-9. Yet in his report, Podraza outlines the documents he relied upon in forming his opinion and references the standard by which he conducted his analysis. Dkt. 37-5, at 4. Moreover, Podraza may base an opinion on facts or data of which he has been made aware and "is not required to verify all of the facts in order to form a reliable opinion." Fed. R. Evid. 703; *Kossa v. Nissan Motor Co.*, No. CIV.A. V-01-58, 2002 WL 34705237, at *2 (S.D. Tex. Dec. 23, 2002); *see also Guzman v. Mem'l Hermann Hosp. Sys.*, 637 F. Supp. 2d 464, 476 (S.D. Tex. 2009) ("[An expert] witness need not have observed or participated in the gathering of the data underlying his opinion.").

"Rather, the personal knowledge requirement hinges on whether the expert personally analyzed the data that was made known to him and formed an expert opinion based on his own assessment of the data within his area of expertise." *Guzman*, 637 F. Supp. 2d at 476 (internal citations and quotations omitted). MM cites *Munoz v. Orr*, 200 F.3d 291, 301-02 (5th Cir. 2000) as demonstrating that exclusion

is warranted where an expert "failed to verify" information provided by counsel. There, however, the expert relied on "compilations of data" for statistical analysis without verifying the underlying data; here, in contrast, Podraza relies on discrete documents—none of which have been challenged as inaccurate—rather than a compilation of data provided by counsel. In addition, in *Munoz*, the expert's failure to verify the data compilations was just one of several reasons the court found his testimony unreliable, which ranged from "particular miscalculations" to problems with "his general approach to the analysis." *Munoz*, 200 F.3d at 301.

Here, Podraza's inclusion of improper legal conclusions in his report does not mandate the wholesale exclusion of his testimony. The Court will strike those two identified legal conclusions from Podraza's report but otherwise allow Podraza's testimony. A "blanket exclusion" of Podraza's expert testimony is not warranted at this time because "the presence of impermissible legal conclusions in an expert's report is not a sufficient basis to strike the entirety of his testimony." *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1047 (N.D. Tex. 2022) (citing *Novedea Sys., Inc. v. Colaberry, Inc.*, No. 6:20-CV-180-JDK, 2021 WL 6618488, at *2 (E.D. Tex. Nov. 8, 2021)). The Court will grant MM's motion as to Podraza's opinions on whether the record shows "evidence of intentional misrepresentation or wrongdoing" by AIA and otherwise deny MM's motion to exclude.

## B.    The Court will not exclude the testimony of Janine Campanaro.

AIA filed a two-page motion to exclude Janine Campanaro, counsel for MM, from testifying as to the reasonableness of any attorney's fees and costs sought by

10

MM at the conclusion of this litigation. Dkt. 33. Specifically, AIA complains that Campanaro's designation does not include "the types or amounts of attorney's fees" or the "standards which she plans to use" in offering her opinion on fees. *Id.* at 3. AIA clarifies in its reply that it believes Campanaro's designation runs afoul of Rule 26(a)(2)(C). Dkt. 53, at 1. In response, MM maintains that Campanaro's designation was proper and that AIA had ample time to collect additional discovery regarding her testimony; in addition, MM points out that the issue of fees need not be proven at trial. Dkt. 45, at 3-6.

AIA identified Rule 26(a)(2)(C) as the basis for its motion to strike, which requires that Campanaro's designation include "the subject matter on which [she] is expected to present evidence" and "a summary of the facts and opinions to which [she] is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). In the designation, MM states that Campanaro "will provide testimony with respect to the reasonableness and necessity of the attorney's fees incurred by Defendant. Her opinion is based on the factors to be considered in determining a reasonable fee for professional legal services." Dkt. 33-1, at 3. Initially, Campanaro's designation provides the "subject matter on which [she] is expected to present evidence," and AIA does not argue otherwise. Dkts. 33-1, at 3; 53, at 1; Fed. R. Civ. P. 26(a)(2)(C)(i).

Campanaro's designation also fulfills Rule 26(a)(2)(C)'s second requirement by specifying that she will offer her opinion on the reasonableness of MM's (future) requested attorney's fees in light of the governing factors relevant to such fees. Dkt. 33-1, at 3; Fed. R. Civ. P. 26(a)(2)(C)(ii); *Madrid v. Wells Fargo Bank, N.A.*, No. EP-

14-CV-00152-DCG, 2016 WL 9455141, at \*7 (W.D. Tex. June 16, 2016) ("[C]ourts should be wary of requiring undue detail with regard to Rule 26(a)(2)(C) designations; the Court finds that this is especially true regarding the designations of experts who discuss attorneys' fees."). Moreover, given that the issue of attorneys' fees will only be litigated after entry of judgment, "any problems with the specificity regarding the issue of attorneys' fees can be resolved with a post-judgment affidavit." W.D. Tex. Loc. R. 54(b); *Madrid*, 2016 WL 9455141, at \*7. AIA's motion to exclude Campanaro's testimony will be denied.

### III.   MOTION TO COMPEL

MM moved to compel AIA to respond to certain requests for production related to the fee and referral agreement between AIA and its expert, which MM learned of during Podraza's deposition. Dkt. 39, at 1-2. During the deposition, in August 2025, MM requested that Podraza produce his referral contract with AIA and information relating to the income he has received under that agreement. *Id.* at 1; Dkt. 39-1, at 5-7. In November 2025, MM alerted counsel for AIA that MM had not received the information Podraza had agreed to produce at his deposition. Dkts. 39, at 2; 39-2. During this exchange, counsel for AIA stated that it was awaiting a request for production from MM. Dkt. 39-2. Later in November, MM served AIA with a formal request for production, yet by this time MM's request was untimely because the response[5] would be due after the close of discovery. Fed. R. Civ. P. 34(b)(2)(A) ("[T]he

---

[5] MM also sought to unilaterally shorten the response deadline for its requests for production to seven days. Dkts. 39, at 2; 39-3. Yet MM does "not have the authority to unilaterally demand that [AIA] respond to new discovery more quickly than provided by the Federal Rules

party to whom the request is directed must respond in writing within 30 days after being served[.]"); W.D. Tex. Loc. Rule 26(e) ("Written discovery is not timely unless the response to that discovery would be due before the discovery deadline. The responding party has no obligation to respond and object to written discovery if the response and objection would not be due until after the discovery deadline.").

"In order to obtain discovery of documents, a party must issue a written request for production to the other party pursuant to Rule 34[.]" *Tillman-Felton v. Blunt*, No. CV 24-2601, 2025 WL 1548573, at \*2 (E.D. La. May 30, 2025). MM has provided no authority for its position that counsel's oral solicitation during Podraza's deposition was sufficient to constitute a request for production to which AIA had a duty to respond. *See* Dkts. 39; 51. Although MM argues that Podraza agreed to produce the at-issue documents, a review of the deposition transcript reveals that Podraza instead stated—when asked about his referral agreement with AIA—that he'd "have to look" and "let [MM] know." Dkt. 39-1, at 5-7.

Moreover, even if MM's November 7, 2025, email following up on the documents constituted a request for production, such a request was still untimely given that discovery closed on November 28, 2025. MM cites *Wilson v. Johns-Manville Sales Corp.*, 810 F.2d 1358, 1363 (5th Cir. 1987), for the proposition that AIA has "no justification" for refusing to produce relevant information regarding Podraza's referral agreement with AIA, yet that case dealt with an expert's "deliberate refusal to produce certain discovery material which the court deemed relevant" and in fact

---

of Civil Procedure or local rules." *Detiege v. Jackson*, No. CV 3:23-0175, 2024 WL 4884414, at \*10 (W.D. La. Nov. 25, 2024).

had ordered the expert to produce. Dkt. 51, at 4. Here, in contrast, MM has not explained its failure to serve AIA a timely discovery request for the information it seeks. *See* Dkts. 39; 51. MM's motion to compel, Dkt. 39, will be denied.

## IV.    EVIDENTIARY OBJECTIONS

In addition to their motions to exclude, the parties also lodged objections to the evidence attached to the motions and responses. Dkts. 43, at 5; 46; 58, at 8.

### A.    The Court will strike legal conclusions from Podraza's affidavit.

MM moved to strike Podraza's affidavit, attached to AIA's motion for summary judgment, arguing that it offers inadmissible statements that are not based on personal knowledge or contain improper legal opinions. Dkt. 46, at 6. AIA responds that Podraza's affidavit is properly based on his review of the record of this case given that he is an expert witness and insists that none of these statements are legal conclusions since they are based on his experience as a CPA. Dkt. 54, at 1-3. MM's objection to Podraza's affidavit as not based on personal knowledge is not well taken given that Podraza is testifying in this case as an expert witness, and as such, his testimony need not be based on personal knowledge. Fed. R. Evid. 602 (stating that personal-knowledge requirement "does not apply to a witness's expert testimony under Rule 703"); *Deshotel v. Wal-Mart La., LLC*, 850 F.3d 742, 746 (5th Cir. 2017) ("[T]here is no requirement that an expert derive his opinion from firsthand knowledge or observation.") (citations omitted).

The Court, however, agrees with MM that Podraza's affidavit includes certain improper legal conclusions. In particular, Podraza's conclusions that AIA performed

under the contract and did not commit fraud are improper legal conclusions that the Court will not consider in resolving the cross-motions for summary judgment. Dkt. 32-1, at 4; 46-1, at 4.[6] AIA asserts that these statements are not legal conclusions, but rather opinions of fact based on Podraza's experience as CPA and tax preparer, yet Podraza's opinions on whether AIA complied with the contract or committed fraud offer an opinion on the "legal implications of evidence." *Ayon v. Austin Indep. Sch. Dist.*, No. 1:21-CV-00209-RP, 2023 WL 3294604, at *4 (W.D. Tex. May 4, 2023) (noting that "an expert may never render conclusions of law, opine on what law governs a dispute or what the applicable law means, or the legal implications of evidence" (citing *Askanase*, 130 F.3d at 673)); *Hanak v. DynCorp, Inc.*, No. SA-09-CA-752-FB, 2013 WL 12384985, at *6 (W.D. Tex. June 18, 2013) ("[E]xpert testimony regarding whether the contract was violated or breached constitutes an improper legal conclusion that invades the province of the court." (citing *Owen*, 698 F.2d at 240)). The Court will not consider Podraza's statements that AIA performed under the contract and did not commit fraud.

---

[6] MM's other objections to Podraza's affidavit are overruled. First, MM objects to Podraza's statement that MM engaged Shell to provide tax preparation services—a fact that is not in dispute and that Podraza may recount as he explains the basis for his opinions. *Int'l Paper Co. v. United States*, 227 F.2d 201, 209 (5th Cir. 1955) ("If the expert has made careful inquiry into the facts, he should be allowed to give them as the basis of the opinion he has expressed."). MM also challenges Podraza's assertion that MM could have relied on Shell's work product to avoid tax liability; this challenge is overruled since, as a tax preparer and CPA, Podraza would be qualified to opine on whether services such as this would protect a taxpayer. Dkt. 46, at 5. MM's objection to this statement as factually incorrect is better addressed during cross-examination.

### B.    AIA's evidentiary objections are overruled.

AIA also lodged a plethora of objections to the evidence MM attached to its motion for summary judgment and response to AIA's motion for summary judgment. Dkts. 43, at 5; 52, at 8. As to evidence subject to AIA's objections that the Court relied on in resolving the motions for summary judgment, those objections will be overruled. *see* Dkts. 36-4; 36-5; 36-9, 36-13, 47-10. AIA argues that these exhibits are not authenticated and include hearsay. Dkts. 43, at 5; 52, at 8. Yet "evidence presented at the summary judgment stage need not be in admissible form." Fed. R. Civ. P. 56(c)(2); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form."). Moreover, AIA has failed to identify the specific statements in these exhibits that it considers to be hearsay. *HWY 67 Dealership JV v. Depositors Ins. Co.*, No. 3:22-CV-00784-L, 2024 WL 3759752, at *10 (N.D. Tex. June 17, 2024), *R & R adopted*, 2024 WL 3493790 (N.D. Tex. July 22, 2024) ("A hearsay objection must identify the specific statements constituting hearsay." (citing Fed. R. Evid. 103(a)(1); *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004))). AIA's remaining evidentiary objections are overruled as moot because the remaining at-issue exhibits were not necessary to, and do not change the outcome of, the Court's resolution of the motions for summary judgment.

### V.    MOTIONS FOR SUMMARY JUDGMENT

While AIA moved for summary judgment on all of its claims as well as MM's counterclaims, MM moved for summary judgment on AIA's claims. Dkts. 32; 34.

Because the resolution of each of these motions is interrelated, the Court addresses them together below in analyzing each claim and counterclaim at issue in the motions.

### A.    Legal Standard

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that no evidence supports the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent

summary-judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**B. A genuine dispute of material fact as to whether AIA performed under the contract prevents summary judgment on AIA's claims for breach of contract and sworn account as well as MM's counterclaim for breach of contract.**

"In Texas, the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Estes v. JP Morgan Chase Bank, Nat. Ass'n*, 613 F. App'x 277, 280 (5th Cir. 2015) (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)). The elements of a claim for sworn account under Texas common law are: (1) sale and delivery of merchandise or performance of services; (2) the amount of the account is just, meaning that the prices were charged in accordance with an agreement, or in the absence of an agreement, they are usual, customary, and

18

reasonable prices for that merchandise or services; and (3) the amount is unpaid. *Coim USA Inc. v. Sjobrand Inc.*, 663 F. Supp. 3d 684, 689 (N.D. Tex. 2023).

Both AIA and MM moved for summary judgment on AIA's breach-of-contract claim; AIA moved for summary judgment on MM's breach-of-contract counterclaim; and MM moved for summary judgment on AIA's claim for sworn account. Dkts. 32, at 10-11, 15-16; 34, at 6-14. Both AIA and MM claim that the other failed to perform under or breached the contract under which AIA provided MM with tax-consulting and return-preparation services. Dkts. 1-2, at 3; 1-5, at 5. While AIA argues that MM breached the contract by declining to make the final payment due to AIA for its services, MM contends that AIA failed to perform its contractual duties by failing to substantiate its finding that MM was entitled to ERTCs. Dkts. 32, at 10-11; 34, at 10-11. The crux of AIA and MM's competing claims for breach of contract and sworn account thus revolve around whether AIA fulfilled its duties under the parties' agreement when it found that MM was eligible for the ERTCs that MM later decided to return—an issue common to both the claims for breach of contract and sworn account. The Court finds that a genuine dispute of material fact prevent the entry of summary judgment on these claims, as each hinges on whether AIA performed under the contract.

Each party submitted competing evidence supporting their positions regarding whether AIA properly performed under the contract such that MM owed AIA the remaining fee due to AIA under to that agreement. AIA relies on the affidavits from Podraza and AIA's president to show that Shell properly determined MM's eligibility

for ERTCs and supported her findings with the information provided to her by MM. Dkt. 32-1, at 3-4; 32-1, at 32-2, at 4; 32-9. MM, on the other hand, presented evidence that Shell's finding that MM was eligible for ERTCs was incorrect and not properly supported by the factual record, most notably in the form of an opinion from a third-party tax preparer MM later hired who found that MM did not in fact qualify for any of the ERTCs that AIA and Shell had said MM did. Dkts. 36-4; 36-9.

While the "question of whether a party has breached a contract is generally a question of law for the court … insofar as there is a fact dispute concerning the failure of a party perform the contract, the court submits the disputed fact questions to the jury." *Energy Dev. Corp. v. Lowmar Expl. Co.*, No. 14-98-00619-CV, 2000 WL 795893, at *4 (Tex. App.—Houston [14th Dist.] June 22, 2000, no pet.); *see also Davincian Techs. v. Outreach Senior Healthcare, Inc.*, No. A-04-CA-393 AWA, 2008 WL 318258, at *3 (W.D. Tex. Feb. 4, 2008) (denying summary judgment where "there [were] fact issues as to whether Plaintiff fully performed under the Agreement as promised"). Because the parties submitted conflicting factual evidence about whether MM qualified for the ERTCs, which is material to whether AIA performed under the contract and thus whether AIA was entitled to any payment under the contract, summary judgment on AIA's claims for breach of contract and sworn account and MM's counterclaim for breach of contract is not warranted.

### C.    Summary judgment in MM's favor on AIA's quantum-meruit claim is warranted given the existence of a valid contract.

MM moved for summary judgment on AIA's quantum-meruit theory of recovery, arguing that the existence of a contract mandates dismissal of this claim,

20

and that in any event, AIA did not provide MM a valuable service for which AIA should be paid. Dkt. 34, at 14-15. AIA responds that it is entitled to recover the unpaid fee for its services under a theory of quantum meruit because MM received the benefit of tax refunds from AIA's services. Dkt. 43, at 12-13. In reply, MM highlights that summary judgment should be entered in its favor given the undisputed existence of a valid contract. Dkt. 56, at 13-14.

While a party to a contract may seek alternative relief under both contract and quasi-contract theories of recovery, "[t]he existence of a valid, express contract that covers the subject matter of the parties' dispute generally precludes recovery under a quasi-contract theory." *Williams v. Colonial Bank, N.A.*, 199 F. App'x 399, 403 (5th Cir. 2006) (per curiam) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)); *see also First Union Nat'l Bank v. Richmont Cap. Partners I, LP*, 168 S.W.3d 917, 931 (Tex. App.—Dallas, 2005, no pet.) (noting that when a relevant contract exists, "there can be no recovery under a quasi-contract theory because parties should be bound by their express agreements"). Here, the parties do not dispute the existence of a valid contract governing AIA's service and entitlement to payment for the consulting services at issue in this lawsuit. Dkts. 32, at 7; 34, at 3; 36-1.

AIA offers no explanation for how it might recover under a theory of quantum meruit given the undisputed existence of a valid contract between the parties governing this dispute and does not suggest that this claim is premised on any services rendered outside the at-issue consulting agreement. *See* Dkt. 43. Moreover,

courts have dismissed such claims at the summary-judgment phase where, as here, the existence of a valid, relevant contract is undisputed. *See, e.g.*, *Craft v. John H. Harland Co.*, No. CIV.A. 305CV2421-D, 2007 WL 2325590, at *8 (N.D. Tex. Aug. 14, 2007) (dismissing claim for quantum meruit where contract expressly covered dispute); *Alorica Inc. v. Tech Mahindra (Ams.) Inc.*, No. 4:24-CV-30, 2025 WL 2483982, at *9 (E.D. Tex. Aug. 28, 2025) (granting summary judgment in defendant's favor where "the disputed services [were] expressly covered by the Contract"). Accordingly, MM's motion for summary judgment on AIA's quantum-meruit claim is granted.

### D.    Genuine disputes of material fact preclude summary judgment on MM's counterclaim for violations of the DTPA.

AIA moved for summary judgment on MM's counterclaim for violations of the DTPA, arguing that MM cannot show that "any false, misleading, or deceptive act by AIA" caused MM damages. Dkt. 32, at 12-13. MM responds that AIA's misrepresentations of Shell's credentials and MM's eligibility for ERTCs induced MM to enter into and make payment under the contract. Dkt. 47, at 9-11. In reply, AIA insists that whether Shell "was a CPA cannot be a producing cause of McCormick's decision to withdraw the ERTC claims because they did not know whether she was or was not a CPA until after they had decided to unilaterally withdraw the claim[.]" Dkt. 52, at 5.

MM alleged violations of the DTPA based on AIA's "false, misleading, or deceptive" statements in misrepresenting the quality of the services it offered, advertising the services sold with the intent to not sell them as advertised, and failing

22

to disclose information concerning the services that would have led MM not to enter the transaction. Dkt. 1-5, at 9-10; Tex. Bus. & Com. Code §§ 17.46(b)(5), (b)(7), (b)(9), (b)(10), (b)(24). To establish a violation of section 17.46(b) of the DTPA, MM must prove that: (1) it is a consumer under the DTPA with respect to its claim against AIA; (2) AIA committed a false, misleading, or deceptive act under section 17.46(b) of the DTPA; and (3) these acts were the producing cause of MM's actual damages." *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002) (citing *Brown v. Bank of Galveston, N.A.*, 963 S.W.2d 511, 513 (Tex. 1998)). The parties dispute whether there is enough evidence to sustain the last two elements of MM's counterclaim for violations of the DTPA.

AIA posits that its portrayal of Shell as a CPA when she was not one could not have caused any damage to MM because MM did not realize Shell was not a CPA until during this litigation, so its decision to return the ERTCs did not stem from this misrepresentation. Dkt. 32, at 12-13; 52, at 4-5. Yet MM does not contend that AIA's misrepresentation of Shell's credentials caused MM to return the ERTCs, but rather that it would not have entered into the contract and paid AIA the initial fee if not for AIA's representation that Shell was a CPA. Dkt. 47, at 11. MM presented evidence that AIA held out Shell as a CPA during the negotiation process, and that absent such a credential, MM would not have entered into the consulting agreement with MM. Dkts. 47-1, at 5; 36-6, at 29. While AIA disputes whether Shell's incorrect CPA credential caused MM's damage in the form of the payment it seeks to recoup from AIA given that Shell was otherwise qualified to perform the work, AIA has not

23

pointed to evidence that MM did not rely on the misrepresentation when deciding to enter into the contract with AIA. *Browne v. World Christian Church*, No. A-99-CA-784 AA, 2001 WL 681256, at *3 (W.D. Tex. Apr. 5, 2001) (denying summary judgment on DTPA claim based on university's misrepresentation as to accreditation status based on genuine disputes of material fact regarding whether plaintiff relied on the misrepresentation to her detriment).

In addition, AIA fails to grapple with the additional factual basis for MM's DTPA claim: that AIA induced MM to make a payment under the contract by representing that MM was eligible for ERTCs when MM was not and Shell had expressed concern that she did not have enough information to determine whether MM was qualified for such tax credits. Dkts. 32, at 12-13; 47, at 10; 52, at 4-5. Indeed, MM presented evidence that an independent consultant for AIA, Christopher Glaub,[7] told MM that it qualified for nearly a million dollars in ERTCs when in fact Shell had expressed concern that "[t]here's nothing I can really relate back to a government order" to qualify MM for ERTCs. Dkts. 47-3, at 1; 47-10, at 4. The parties' factual dispute over whether MM in fact qualified for the ERTCs—and thus whether AIA misled MM in violation of the DTPA—is best resolved by a jury. *Lopez v. Countrywide Mortg.*, No. CV 2:06-116, 2009 WL 10696288, at *16 (S.D. Tex. Mar. 19, 2009) (noting that whether defendant's "actions were 'false, misleading, or deceptive' … in violation

---

[7] AIA quibbles that Glaub, who relayed MM's purported eligibility for the ERTCs and solicited payment for AIA, was not an AIA employee. Dkt. 32, at 14. Yet AIA has cited no case law suggesting that it may not be held liable for any misrepresentations Glaub made to MM while acting as AIA's paid affiliate. Dkt. 32-11 (independent consultant agreement under which Glaub agreed to "represent [AIA] as a salesperson").

of the DTPA is a question of fact for a jury to decide"). Given that MM claims that the misrepresentation that MM qualified for ERTCs—when in fact AIA knew it lacked sufficient information to make such a finding—induced MM to submit a payment to AIA, the Court finds that AIA has not met its burden of demonstrating that it is entitled to judgment as a matter of law on MM's counterclaim for violations of the DTPA.

### E. Genuine disputes of material fact preclude summary judgment on MM's counterclaims for fraud and fraudulent inducement.

AIA also moved for summary judgment on MM's counterclaims for fraud and fraudulent inducement, arguing that AIA never made any false statements upon which MM relied and that MM suffered no damages since the "IRS never audited or even questioned" the ERTCs it granted to MM. Dkt. 32, at 13-14. MM once again posits that AIA's representations that a CPA would work on MM's case and that MM was qualified for the ERTCs were material misrepresentations that MM relied upon in entering the consulting-services contract with AIA and making payment under that agreement. Dkt. 47, at 12-18. In reply, AIA insists that Shell's portrayal as a CPA, rather than an attorney and tax preparer, was "immaterial to [MM]'s decision to purportedly return the ERTCs." Dkt. 52, at 6.

To prevail on a claim for fraud under Texas law, MM must show that (1) AIA made a material misrepresentation; (2) AIA knew then that the representation was false or lacked knowledge of its truth; (3) AIA intended that MM should rely or act on the misrepresentation; (4) MM relied on the misrepresentation; and (5) MM's reliance on the misrepresentation caused injury. *Wesdem, LLC v. Ill. Tool Works, Inc.*, 70

F.4th 285, 291 (5th Cir. 2023) (citing *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019)). Fraudulent inducement consists of the same elements as fraud, though only arises in the context of a contract, and as such, MM "must establish the elements of fraud 'as they relate to an agreement between the parties.'" *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 743 (N.D. Tex. 2014) ("Fraudulent inducement 'is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof.'" (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001))).

AIA challenges MM's ability to prevail on the first, fourth and fifth elements of MM's fraud claims, arguing that AIA did not make any false statements upon which MM relied and could not have suffered any damages since it voluntarily returned the ERTCs. *See* Dkts. 32, at 13-14; 52, at 6. As explained above, AIA has not shown that there are no genuine disputes of material fact on the issue of whether AIA made any false misrepresentations on which MM relied in deciding to enter into the contract with AIA and submit the initial $97,579.21 payment to AIA. *See supra* Parts IV.A, D; *see also Berquist v. Onisiforou*, 731 S.W.2d 577, 580 (Tex. App.—Houston [14th Dist.] 1987, no writ) ("[W]hether a fraud has been committed is a fact question to be determined by the trier of facts."). The Court will deny AIA's motion for summary judgment on MM's counterclaims for fraud and fraudulent inducement.

**F.     Genuine disputes of material fact preclude summary judgment on MM's counterclaim for negligent misrepresentation.**

AIA finally moved for summary judgment on MM's counterclaim for negligent misrepresentation, contending that MM cannot identify any evidence that AIA ever

made a false statement that MM "justifiably relied upon" or that AIA failed to exercise reasonable care in communicating information to MM. Dkt. 32, at 16-18. MM responds that this claim rests on the same misrepresentations that form the basis of its DTPA and fraud claims, insisting that AIA has "failed to sufficiently show the absence of genuine issues of material fact as to each element of [MM]'s negligent misrepresentation claim." Dkt. 47, at 18-21. In reply, AIA highlights that a negligent-misrepresentation claim requires a misstatement of fact rather than a promise of future performance and here MM's claim stems from "speculative future events in which the IRS might have concluded McCormick did not qualify for ERTC benefits." Dkt. 52, at 7.

To prevail on its counterclaim for negligent misrepresentation under Texas law, MM must demonstrate that: (1) AIA's representation to MM in the course of AIA's business or in a transaction in which AIA had an interest; (2) AIA's providing false information for the guidance of others; (3) AIA's failure to exercise reasonable care or competence in obtaining or communicating information; (4) MM's justifiable reliance on defendant's representation; and (5) AIA's negligent misrepresentation proximately causing the MM's injury. *Willis v. Marshall*, 401 S.W.3d 689, 698 (Tex. App.—El Paso 2013, no pet.). As explained above, AIA has not established that there are no material disputes of fact such that summary judgment is warranted on this counterclaim given the factual disputes over the falsity of AIA's representations to MM regarding AIA's services and MM's eligibility for the ERTCs. *See* Parts IV.B, D-

27

E. The Court will deny AIA's motion for summary judgment on MM's negligent-misrepresentation counterclaim.

## VI.    CONCLUSION

Based on the foregoing, **IT IS ORDERED** that AIA's motion for summary judgment, Dkt. 32, is **DENIED**.

**IT IS FURTHER ORDERED** AIA's motion to strike, Dkt. 33, is **DENIED**.

**IT IS FURTHER ORDERED** MM's motion for summary judgment, Dkt. 34, is **GRANTED IN PART** and **DENIED IN PART**. MM's motion for summary judgment is granted as to AIA's quantum-meruit claim and otherwise denied.

**IT IS FURTHER ORDERED** MM's motion to exclude, Dkt. 35, is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** MM's motion to compel, Dkt. 39, is **DENIED**.

**IT IS FURTHER ORDERED** MM's motion to strike, Dkt. 46, is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FINALLY ORDERED** and MM's motion to supplement, Dkt. 60, is **DENIED AS MOOT**.

SIGNED February 27, 2026.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE

28